UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYNTHIA ELDRIDGE,　　　　　　　　　　　　　　CV 04-1360-HA

　　　　Plaintiff,　　　　　　　　　　　　　　　　OPINION AND ORDER

　　v.

Pollin Hotels II, LLC,

　　　　Defendant.
---

Scott Hunt
Matthew B. Duckworth
Busse & Hunt
621 S.W. Morrison Street
Suite #521
Portland, OR 97205
　　Attorneys for Plaintiff

Jeffrey Chicoine
Jack B. Schwartz
Newcomb Sabin Schwartz & Landsverk, LLP
111 S.W. Fifth Avenue
Suite 4040
Portland, OR 97204
　　Attorneys for Defendant

HAGGERTY, Chief Judge:

1 – OPINION AND ORDER

Plaintiff brought this employment-related action against her former employer, Pollin Hotels II, LLC, d/b/a Sheraton Portland Airport Hotel (defendant or hotel). Plaintiff's Complaint includes four claims for relief: (1) Sex discrimination under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq; (2) Sex discrimination under O.R.S. 659; (3) Age discrimination under O.R.S. 659A; and (4) Sex discrimination under § 7(b) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b) and § 16(b) of the Fair Labor Standards At (FLSA), 29 U.S.C. § 216(b).

On May 10, 2005, defendant filed a Motion for Partial Summary Judgment (Doc. #13) against plaintiff's first, second, and third claims for relief. On June 10, 2005, defendant filed a Motion to Strike (Doc. #24) portions of plaintiff's affidavits. Oral argument was heard on July 29, 2005. For the reasons stated below, defendant's motions are denied.

**PROCEDURAL ISSUES - MOTION TO STRIKE**

Defendant moves to strike paragraphs five and six of plaintiff's affidavit dated May 23, 2005 (May 23 Affidavit), and paragraph two of plaintiff's Supplemental Affidavit dated May 26, 2005 (May 26 Affidavit). Defendant argues that the facts asserted in these paragraphs are inconsistent with plaintiff's prior testimony at her deposition.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991) (citing *Foster v. Arcata Assocs.,* 772 F.2d 1453, 1462 (9th Cir. 1985) and *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 543-44 (9th Cir. 1975)). However, before disregarding affidavit testimony because it contradicts prior testimony, the court must make a factual determination that the contradiction was actually a "sham." *Kennedy*, 952 F.2d at 267. A contradiction is not a sham if it is "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence . . . ." *Id.*

2 – OPINION AND ORDER

Furthermore, a non-moving party may elaborate upon, explain, or clarify prior testimony elicited during deposition, and minor inconsistencies that result from an honest discrepancy or mistake affords no basis for excluding an opposition affidavit. *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

Here, all of the statements at issue concern the chronological order of events that took place during the five minute period plaintiff was given to review the Severance Agreement. The court has reviewed each of the alleged inconsistencies and finds that there is no indication that any statement in plaintiff's affidavits was produced as a "sham" to avoid summary judgment. In fact, plaintiff made clear in her deposition testimony that she could not remember the exact order of events:

> At some point, I believe it was right then, Lisa . . . came in to give me a hug . . . . Mr. Thayer walks right in after her and says, "That's not appropriate," and has her leave. And so – and I – I believe after she left – I don't know if it was right before – no. I believe it may have even have been right before, I'm not sure of the exact chronological order, but I picked up the phone. I called my husband.

Eldridge Dep. at 92:16-24. Any inconsistencies between this and plaintiff's subsequent statements in her affidavits appear to the be the result of an honest discrepancy or an effort to clarify prior testimony.

Furthermore, in conducting its analysis below, the court did not rely on any exact chronological order of events. It is undisputed that plaintiff was given no more than five minutes to review the Severance Agreement and that at some point during that five minute period she spoke with her husband on the phone, was interrupted by Lisa, was interrupted by Thayer, and that Thayer was back in his office when she went to give him the signed document. These facts are sufficient for this court to make a summary judgment determination. Defendant's motion to strike is denied.

3 – OPINION AND ORDER

## FACTUAL BACKGROUND

Plaintiff was hired by defendant in October 1996 and worked at the hotel until she was discharged on November 8, 2002. Plaintiff was hired as a Catering Manager by Janet Eichner (Eichner), the Director of Sales and Marketing. Plaintiff was responsible for supervising the banquet department and selling group meetings and events, which included entering into contracts for such meetings and events. At the time plaintiff was hired, Richard Ransome (Ransome) was the general manager of the hotel. In June 2001, plaintiff was promoted to Assistant Catering Director.

In October or November 2001, Randall Thayer (Thayer) became general manager of the hotel, and plaintiff began reporting directly to him. Eichner left soon after Thayer's arrival, and Eichner's position was filled in February 2002 by Mr. Kerry Breen (Breen). Thayer did not post Eichner's position internally and did not consider plaintiff for it. Also in February 2002, Thayer promoted plaintiff to Director of Catering.

On November 8, 2002, at approximately 4:30 p.m., Breen entered plaintiff's office, sat down, and stated that it was the worst day of his life. Thayer then entered plaintiff's office and informed her that, "Due to economic reasons, the director of catering position is being eliminated." Eldridge Dep. at 86:18-19. Plaintiff asked whether her discharge had anything to do with her performance, and Thayer said that it did not. Plaintiff asked Thayer if he would put it in writing that her discharge was not due to performance issues, and he said that he would.

Plaintiff asked Thayer what was going to happen to her position, and Thayer stated that Breen would absorb her duties. Thayer then handed plaintiff a document and said, "You know you'll need to sign this." *Id.* at 87:9-10. The two-page document was entitled

4 – OPINION AND ORDER

"Severance Agreement" and was addressed to plaintiff.  *See* Pl.'s Concise Statement of Material Facts in Dispute, Ex. 7 (Severance Agreement).  Thayer then "kind of summarized" the Severance Agreement for plaintiff and placed it in front of her.  Eldridge Dep. at 87:12.

Plaintiff testified that this "was all happening very quickly.  It was very surreal." *Id.* at 88:1-2.  Plaintiff asked Thayer to permit her to take the Severance Agreement home overnight and meet with him at 8:00 a.m. the next morning.  Thayer refused and said, "You have to sign it now." *Id.* at 88:7.  Plaintiff asked, "What do you mean?  You said this is not due to poor performance.  It's strictly a business decision, but yet I don't even have time to review the document, take this home, look – talk it over with my husband and meet you in the morning?" *Id.* at 88:8-12.  Thayer responded, "No.  You have to sign it now." *Id.* at 88:13.  When plaintiff asked what would happen if she did not sign it "now," Thayer said, "Then the deal is off.  You won't get anything." *Id.* at 88:13-16.  Thayer did not elaborate beyond this, and plaintiff understood him to mean that she would not get paid anything, including four days she had already worked.  Plaintiff was also concerned that she would get a negative recommendation from Thayer if she did not sign the document that afternoon.

In refusing to permit plaintiff to take the Severance Agreement home overnight, Thayer said, "You're a reasonably intelligent woman.  You should be able to go ahead and sign this without taking it home and talking to your husband about it." *Id.* at 91:6-8.  Plaintiff responded by saying, "Don't patronize me," to which Thayer said, "What, you're not a reasonably intelligent woman?" *Id.* at 91:12-14.

Plaintiff then asked Thayer if she could at least have five minutes to look over the Severance Agreement.  Thayer "reluctantly" agreed but remained sitting in plaintiff's office. *Id.* at 91:17.  Plaintiff then asked him to give her five minutes alone, and Thayer left her office but remained in the area outside of her office.  At this point, plaintiff's computer was

5 – OPINION AND ORDER

being accessed and her files were being deleted.

It is unclear how much time plaintiff actually took to review the Severance Agreement. First, a sales manager named Lisa entered plaintiff's office to give her a hug. Thayer walked in right after Lisa and asked Lisa to leave. At some point, plaintiff also called her husband, who is a lawyer. During their conversation plaintiff "was pretty much hysterical" and her husband "was trying to calm [her] down." *Id.* at 92:24-25. Plaintiff told her husband that she had been fired, but they did not go over the Severance Agreement. *Id.* at 92-93. At the time plaintiff signed the Severance Agreement, Breen was still in the area outside plaintiff's office and Thayer had gone to his own office.

Plaintiff testified that "I just signed the document, and I got up, and I went, took it into [Thayer's] office, and he gave me the letter that was supposedly to clarify that the termination was not due to poor performance on my part." *Id.* at 93:9-12. In her supplemental affidavit to this court, plaintiff states that her understanding at the time was that the offer would be "off" if she did not sign it within the five minutes Thayer granted her. Supp. Aff. of Pl. at 2. Therefore, she signed the Severance Agreement without fully reviewing it.

The Severance Agreement provides in relevant part:

> You acknowledge that the payments and benefits due to you in this Agreement resulting from your departure from the Hotel are in lieu of any and all claims that you may have against the Hotel (other than benefits under the Hotel's employee benefit plans that by their terms survive termination of employment (COBRA benefits).

Severance Agreement at 1.

After her discharge, plaintiff had a conversation with Ed Tritchek (Tritchek). Tritchek had previously interviewed with Thayer for the Director of Sales and Marketing position that was eventually filled by Breen. Tritchek stated that Thayer had told him that

6 – OPINION AND ORDER

Thayer did not want to hire a woman for that position and did not want a woman in management because women were not as motivated or hard working as men.

**STANDARDS**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have some limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**ANALYSIS**

Defendant brings this Motion for Partial Summary Judgment against plaintiff's Title VII and state law claims.[1] Defendant argues that these claims are barred under the release and waiver in the Severance Agreement. Plaintiff argues that the Severance Agreement is not enforceable because it does not comply with the Older Workers Benefit Protection Act (OWBPA) and because the execution of the Severance Agreement was not voluntary, deliberate, and informed.

**A. Release and waiver under OWBPA**

OWBPA provides that, "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f). The OWBPA then states several specific requirements that must be present in order for a waiver to be knowing and voluntary. *Id.* These requirements apply to claims brought under the ADEA. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998) ("An employee may not waive an ADEA claim unless the waiver or release satisfies the OWBPA's requirements.") (internal quotations omitted). Here, defendant concedes that the Severance Agreement does not comply with OWBPA's specific requirements for waiver and, therefore, was not sufficient to waive plaintiff's ADEA claim.

Plaintiff argues that because OWBPA's specific requirements for waiver were not met, the entire Severance Agreement is unenforceable. Plaintiff cites to *Flick v. Bank of America*, 197 F. Supp. 2d 1229 (D. Nev. 2002) to support this argument. In *Flick*, the

---

[1]Defendant concedes that even if the Severance Agreement is valid against some of plaintiff's claims, it is not sufficient to bar plaintiff's ADEA claim.

plaintiff brought Title VII and ADEA claims against the defendant, then authorized her attorney to enter into a settlement agreement, and then changed her mind and refused to sign the settlement agreement. *Id.* at 1230-31. The defendant moved to enforce the settlement agreement, which included a release and waiver of all claims, and the court found that plaintiff had agreed to the settlement agreement. *Id.* However, the court found that one of plaintiff's claims was governed by the OWBPA, that the settlement agreement did not comply with OWBPA's specific requirements for waiver, and that the settlement agreement did not apportion the settlement among plaintiff's various claims. Therefore, the court held that it could not enforce the settlement agreement as to any of plaintiff's claims. Id. at 1233.

*Flick* is inapplicable to the situation here. First, the Severance Agreement was executed prior to the time plaintiff filed any claims in court, meaning that the existence of any particular claims was completely unknown at the time of execution. Therefore, the quandary faced by the court in *Flick* is not present here. Second, the Supreme Court has indicated that a release and waiver could be unenforceable against an ADEA claim but enforceable against other claims. *See Oubre*, 522 U.S. at 427-28 (stating that because the plaintiff's "release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her <u>insofar as</u> it purports to waive or release her ADEA claim" and that complex questions may arise "where a release is effective as to some claims but not as to ADEA claims") (emphasis added). In sum, if the court found that the Severance Agreement was enforceable, it could enforce the waiver and release against plaintiff's non-ADEA claims.

**B.  Release and waiver of Title VII claim**

The validity of a waiver of Title VII claims is governed by federal law. *Stroman v. W. Coast Grocery Co.,* 884 F.2d 458, 461 (9th Cir. 1989). Ordinarily, a general release of

9 – OPINION AND ORDER

Title VII claims does not violate public policy. "To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII." *Id.* at 460-61 (quoting *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) (citations omitted)). Nevertheless, a waiver of rights under Title VII must be closely scrutinized and is valid only if it is "voluntary, deliberate and informed." *Id.* at 461-62 (quotation and citation omitted).

Under *Stroman,* whether a release is voluntary, deliberate, and informed is a factual inquiry based on the totality of the circumstances and must be determined on a case-by-case basis. *Id.* at 462. The determination of whether a waiver is voluntary, deliberate, and informed requires the court to consider the following criteria:

> 1) whether the release is voluntary depends on objective and subjective factors; 2) of primary importance is clarity and lack of ambiguity in the agreement; 3) also important is plaintiff's education and business experience; 4) whether there was a non-coercive atmosphere surrounding the execution of the agreement; and 5) whether the employee had the benefit of legal counsel.

*Dominguez v. BCW, Inc.*, 99 F. Supp. 2d 1155, 1159-60 (D. Ariz. 2000) (citing *Stroman*, 884 F.2d at 462).

### a. Clarity and lack of ambiguity

As noted above, paragraph (d) of the Severance Agreement provides:

> You acknowledge that the payments and benefits due to you in this Agreement resulting from your departure from the Hotel are in lieu of any and all claims that you may have against the Hotel (other than benefits under the Hotel's employee benefit plans that by their terms survive termination of employment (COBRA benefits).

Severance Agreement at 1. This language is similar to that in *Maier v. Pacific Heritage Homes, Incorporated*, 72 F. Supp. 2d 1184, 1191 (D. Or. 1999), in which the court considered an agreement that stated that, "[i]n lieu of any other additional consideration for your having previously accepted employment by, and for the services you have performed

10 – OPINION AND ORDER

for the company, we are prepared to provide the following severance benefits . . . ." The court in *Maier* held that, although this language was "not a model of lawyer-like drafting," it was effective to release the defendant from the plaintiff's claims. *Id.*

However, here, paragraph (c) of the Severance Agreement may have been misleading because it suggests that plaintiff may not have been entitled to compensation for the days she worked prior to being terminated unless she signed it: "Except as otherwise specifically provided herein, you will not be entitled to any compensation or benefits or to participate in any past, present or future employee benefit program or arrangements of the Hotel after the effective date." Severance Agreement at 1. Whether this language was actually misleading is for a fact finder to decide. This factor weighs in favor of plaintiff.

### b. Plaintiff's education and business experience

Plaintiff has an associates degree in general studies, completed court reporting school and has attended "scattered college classes." Eldridge Dep. at 13. In addition, plaintiff has been working in the hospitality industry since 1989. Plaintiff was hired by defendant in 1996 as a Catering Manager and worked in that position until 2001. Plaintiff's duties in this position included entering into contracts with groups who held their meetings and events at the hotel. However, plaintiff characterizes these contracts as "simple" and states that she has no familiarity with legal releases. May 23 Affidavit. Nonetheless, the court finds that plaintiff's education and skills weigh in favor of defendant. *See Stroman*, 884 F.2d at 462-63 (finding that community college degree and Army training were sufficient for plaintiff to have the education and skill necessary to understand the waiver).

### c. Non-coercive atmosphere

Defendant argues that the circumstances surrounding the execution of the Severance Agreement were not coercive because plaintiff was given time and space to review the

11 – OPINION AND ORDER

Severance Agreement and because it was she who took the affirmative step to sign it and return it to Thayer. Defendant also emphasizes the fact that plaintiff had the "wherewithal and presence of mind" to ask for a written statement from Thayer that she was not being terminated due to her performance. Def.'s Mem. in Supp. of Mot. for Partial Summ. J. at 6.

The court finds defendant's characterization of the atmosphere surrounding the execution of the Severance Agreement far from complete. In fact, it was approximately 4:30 p.m. when Thayer told plaintiff she was being terminated and presented her with the Severance Agreement. When she asked to take the document home with her, discuss it with her husband, and meet with Thayer first thing the next morning, she was told that if she did not sign the Severance Agreement that night, "Then the deal is off. You won't get anything." Eldridge Dep. at 88:15-16. Plaintiff understood this to mean that she would not be compensated for time already worked unless she signed the document, and she was concerned that she would get a negative recommendation from Thayer if she did not sign the document.

Adding to this coercive environment was Thayer's patronizing remark that plaintiff should not need to take the document home overnight because she was "a reasonably intelligent woman" who should not need to review it with her husband. *Id.* at 91. This is just the sort of comment that creates a coercive atmosphere. Furthermore, when plaintiff asked if she could at least have five minutes to review the document, Thayer only reluctantly agreed, thereby adding to the time pressured exerted on plaintiff. Thayer and Breen then remained in plaintiff's office until they were asked to leave. Plaintiff was subsequently interrupted two times, and she could see that her computer was being accessed and her files being erased. Clearly, this factor weighs in favor of plaintiff.

 d. The benefit of legal counsel

12 – OPINION AND ORDER

Defendant argues that this factor weighs in its favor because plaintiff was not actively discouraged from seeking legal counsel and because she called her husband, who is a lawyer, during the five minute period she was given to review the Severance Agreement. However, defendant does not assert what type of law plaintiff's husband practices, and there is no reason for the court to assume he has any specialized knowledge in labor and employment issues. The court finds that providing plaintiff with a five minute period in the late afternoon to review a legal document was tantamount to precluding her from obtaining legal counsel. This factor weighs in favor of plaintiff.

After considering the required criteria, the court finds that the relevant factors weigh in favor of plaintiff's argument that she did not give a voluntary, deliberate, and informed waiver of her Title VII claim. Therefore, defendant's partial summary judgment motion is denied as to that claim.

## C.  Release and waiver under Oregon law

Defendant also moves for summary judgment against plaintiff's state law claims for sex and age discrimination in violation of Oregon law. An agreement to waive legal claims under Oregon law is subject to construction and interpretation like any other contract. *Patterson v. Am. Med. Sys. Inc.*, 916 P.2d 881, 882-83 (Or. App. 1996). "If the terms of the release unambiguously express the intent of the parties, it must be enforced accordingly." *Id.* However, if the terms are ambiguous, the trier of fact must ascertain the intent of the parties and construe the contract consistently with that intent. *Id.* A contract is ambiguous if it is capable of more than one reasonable interpretation. *Id.* For a release agreement to be valid, "there must be both the knowledge of the existence of the claim and an intention to relinquish it," unless the agreement contains a specific promise to release liability for unanticipated claims. *Id.*; *see also In re Kulka's Estate, Hansen v. Oregon Humane Soc'y,*

13 – OPINION AND ORDER

18 P.2d 1036, 1040 (Or. 1933) (to be valid and binding, a release must be executed with full knowledge of the import of what is being signed and with the intent to discharge from liability).

Here, for the reasons provided above in reference to plaintiff's Title VII claim, the court finds that plaintiff has raised a genuine issue of fact as to whether she had knowledge of the existence of her claims and the intent to relinquish them. Accordingly, defendant's summary judgment motion as to plaintiff's state law claims is also denied.

///

///

///

///

## **CONCLUSION**

For the aforementioned reasons, defendant's Motion for Partial Summary Judgment (Doc. #13) and Motion to Strike (Doc. #24) are DENIED.

IT IS SO ORDERED.

Dated this __1__ day of August, 2005.

      /s/Ancer L.Haggerty

      Ancer L. Haggerty
      United States District Judge